## TIOGA COUNTY.

JANUARY TERM, 1884, No. 332.                    MAY 15, 1884.

## McDowell *v.* Jones, *et al.*

1. On November 28, 1862, K obtained from U a loan of $19,000, and delivered to U a note for that amount, payable on June 10, 1864, with interest payable semi-annually, and in which it was stated " as collateral security for the payment of this note, I have this day assigned to the said U a certain bond of D for $40,000, dated November 10, 1862, and payable June 10, 1864, with warrant of attorney, together with the indenture of mortgage, securing said bond, recorded, &c.,    *    *    * and I agree with the said U, his executors, administrators, or assigns, that upon default being made by me in the payment of the interest or principal of this note for ten days after the same may become due, that he or they may and shall sell the said bond and mortgage,    *    *    * and apply the proceeds of said sale to the payment of this note and interest, &c." There were no witnesses; it was not under seal, and was not acknowledged or recorded. *Held,* that while this kind of an assignment would not enable the assignee to proceed by suit in his own name, it was, nevertheless, effectual to pass a perfect title to both the bond and the mortgage to U, the assignee, in accordance with its terms.

2. In 1864, D sold to J two lots of ground subject to the said mortgage of $40,000. J took possession and made improvements; and he and his heirs have continued in possession ever since. The deeds to J were dated September 30, 1864, and January 10, 1865, and both were recorded on February 10, 1866. On October 10, 1864, D paid to U $3,000, and procured from him a release, by which the lots bought by J were released from the lien of the mortgage, which release was recorded February 2, 1865. On February 17, 1865, judgment was entered upon the bond in the name of U, assignee of K, against D. This judgment was satified of record on December 6, 1865. In June, 1865, D gave to K another bond and warrant of attorney, which was an exact copy of the one assigned to U, except as to the names of the witnesses. In November, 1865, K obtained $25,000 from M, and assigned to him this second bond and warrant, which was recorded December 7, 1865. In 1871, M assigned the same to T, who entered judgment thereon in 1874. The land in dispute was sold at sheriff's sale under this judgment, and purchased by T, who afterwards conveyed the premises to McD. *Held,* in an action of ejectment by McD. against the heirs of J, that U, being the assignee of the bond and mortgage, and plaintiff in the judgment, was the proper person to release the land, and that the release was certainly operative against M, whose interest never came into existence until months after it was executed, delivered, and recorded.

3. The defendant in the judgment entered by U, assignee of K, having made no objection to the form in which the judgment was entered, no one else could do so, and it was as fully operative in all respects as if it had been entered in the name of K for the use of U.

4. If it was a fraud upon M to give him a bond dated back to the same date as the original bond, J, who had nothing to do with it, and whose rights were established before any right of M had come into existence, could not be affected by it.

5. The fact that J was in possession of the land was sufficient to put M upon inquiry as to the title of J.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Tioga County*.

Ejectment by Thomas McDowell against Rachael Jones, Margaret Jones, Mary Jones, Edward Jones, and Benjamin Jones, to recover possession of two lots of land in Bloss township, Tioga county.

The case was submitted to the court below, MAYER, P. J., without the intervention of a jury, under a written agreement between the parties in accordance with the act of 22d April, 1874.

The findings and conclusions of the Court were as follows:

This is an action of ejectment brought by Thomas McDowell, the plaintiff, against Rachel Jones and others, heirs of Benjamin Jones, deceased, defendants, to recover possession of two pieces, parcels, or lots of ground, situate in Blossburg, Tioga county. Both parties claim under a common source of title, Edwin Dyer.

The plaintiff's title is derived from a sheriff's sale of the premises in dispute, made under and in pursuance of proceedings had upon a mortgage covering said premises, given by Edwin Dyer to Henry E. Keene, dated November 10, 1862, and recorded same day in Tioga county, in mortgage book No. 2, page 308, etc.

The defendants claim title under two several deeds executed and delivered by Edwin Dyer to Benjamin Jones, the one dated September 30, 1864, and the other dated January 10, 1865. Both of said deeds were recorded in Tioga county February 10, 1866, in deed book No. 37, page 367, etc.

The following facts were found by the Court:

*First.* Edwin Dyer was the owner of the land in controversy, and on the tenth day of November, 1862, executed and delivered to Henry E. Keene, of the city of Philadelphia, who was his son-in-law, a bond, with warrant of attorney attached, in the penal sum of $80,000, conditioned for the payment of $40,000, on the 10th day of June, A. D. 1864, with interest payable half-yearly.

*Second.* On the same day, November 10, 1862, Dyer executed and delivered to said Keene a mortgage to secure the payment of said bond, which was recorded in Tioga county on the day of its execution, and delivery in mortgage book No. 2, page 308, etc. This mortgage covered a large amount of real estate situate in Tioga county, including the land for which this ejectment was brought.

*Third.* The bond and mortgage were delivered by Dyer to Keene, as his agent and attorney, for the purpose of negotiating a loan for Dyer.

*Fourth.* On the 28th day of November, 1862, Keene negotiated a loan of $19,000, from one Samuel C. Upham, of the city of Philadelphia. At the time he procured said loan Keene made and delivered to Upham his own note, dated November 28, 1862, payable June 10, 1864, the date when the bond secured by the mortgage would become due and payable. This note was given as additional security to Upham for the loan of $19,000.

This note is as follows:

PHILADELPHIA, *November 28, 1862.*

On the 10th day of June, 1864, I promise to pay Samuel C. Upham or order, nineteen thousand dollars without defalcation for value received, with interest payable semi-annually as follows: On the 10th day of December, 1862, on the 10th day of June, 1863, on the 10th day of December, 1863, and at the maturity of this note, to wit: on the 10th day of June, 1864; and as collateral security for the payment of this note I have this day assigned to the said Samuel C. Upham a certain bond of Edwin Dyer for $40,-000, dated November 10, 1862, and payable June 10, 1864, with warrant of attorney, together with the indenture of mortgage securing said bond, recorded in the proper office in Tioga county, in mortgage book No. 2, page 308, etc., and I agree with the said Samuel C. Upham, his executors, administrators, or assigns, that upon default being made by me in the payment of the interest or principal of this note for ten days after the same may become due, that he or they may and shall sell the said bond and mortgage at private or public sale, without further reference or notice to me, and apply the proceeds of said sale to the payment of this note and interest, and to the expenses incurred in such sale, and should there be any deficiency, I promise to pay the same to the holder of this note on demand.

HENRY E. KEENE.

*Fifth.* By the terms set forth in this note Keene assigned to Upham the bond of Dyer for $40,000, with warrant of attorney, together with the indenture of mortgage securing said bond, as collateral security for the payment of said note.

*Sixth.* In 1864, Edwin Dyer sold to Benjamin Jones, by articles of agreement, the land in controversy, and Jones went into possession and made improvements. Jones and

[McDowell *v.* Jones *et al.*]

his heirs have continued in possession ever since the purchase, in 1864.

*Seventh.* On the 10th day of October, 1864, Dyer procured from Upham a release, by which the premises in dispute in this ejectment were released and discharged from the lien of the mortgage, which had been assigned to Upham by Keene on the 28th day of November, 1862. At the time the release was executed, Dyer paid to Upham the sum of three thousand dollars. The release was recorded in Tioga county on the 2d day of February, 1865, in mortgage book No. 2, page 472, etc.

*Eighth.* On the 30th of September, 1864, Dyer executed and delivered to Benjamin Jones a deed for one of the lots in dispute, and on the 10th day of January, 1865, executed and delivered a deed for the other lot. Both deeds were recorded in Tioga county on the 10th day of February, 1866, in deed book No. 37, page 367, etc. At the time these deeds were delivered, Jones paid to Dyer the balance of the purchase money.

*Ninth.* The defendants are the heirs of Benjamin Jones, and in possession of the land in dispute.

*Tenth.* On the 6th of February, 1865, judgment was entered in the court of common pleas of Philadelphia, in the name of Henry Keene, for the use of Samuel C. Upham *versus* Edwin Dyer, on the warrant of attorney attached to the bond, which had been assigned by Keene to Upham, when the loan of $19,000 was procured. An exemplification of the record of this judgment was taken to Tioga county and entered on the 17th day of February, 1865, in the court of common pleas of Tioga county. On the 2d of December, 1865, this judgment was satisfied of record in the common pleas of Philadelphia, and on the 6th day of December, 1865, satisfied of record in the common pleas of Tioga county.

(The record shows that the above-named suit was brought by Samuel C. Upham, assignee of Henry E. Keene, against Edwin Dyer.)

*Eleventh.* After judgment had been entered on the bond and warrant of attorney assigned to Upham, Keene undertook to procure another loan for Dyer, and to effectuate this purpose had another bond and warrant of attorney prepared and executed by Dyer to himself. This bond and warrant of attorney was an exact copy of the original bond and warrant of attorney which had been assigned to Upham, except that the subscribing witnesses to its execution were different. This last or second bond and warrant of attorney were drawn in June, 1865, and

[McDowell *v.* Jones *et al.*]

executed and delivered to Keene about the latter part of July, 1865.

*Twelfth.* On the 29th day of November, 1865, this second bond and warrant of attorney, together with the original mortgage, were assigned to David M. Jaquett for a loan of $25,000, which had been procured from him. This assignment was recorded in Tioga county in mortgage book No. 2, page 528, on the 7th day of December, 1865. December 29, 1871, Jaquett assigned said bond and mortgage to Phœbe M. Thompson.

*Thirteenth.* Judgment was entered on the bond and warrant of attorney assigned to Phœbe M. Thompson in the court of common pleas of Philadelphia, to No. 287, December term, 1874. A writ of *test. fi. fa.* was issued to Tioga county, February 16, 1876, and the land in dispute levied on by the sheriff, inquisition held, and the property condemned. March 15, 1876, a writ of *test. vend. exp.* was issued, and the land levied upon was sold by the sheriff of Tioga county to Phœbe M. Thompson. April 7, 1876, a deed was made by the sheriff of Tioga county to Phœbe M. Thompson, duly acknowledged and recorded in Tioga county, on the 20th day of August, 1877, in deed book 58, page 532, etc. On the 16th day of August, 1877, Phœbe M. Thompson sold and conveyed, by deed, the premises in dispute to Thomas McDowell. The writ of ejectment was issued October 4, 1883, and served on the defendants.

From the foregoing facts, the Court made the following conclusions of law:

"*First.* That Samuel C. Upham was a *bona fide* assignee of the original bond and warrant of attorney, secured by the mortgage dated November 10, 1862.

"*Second.* That the assignment contained in the note of Henry Keene to Samuel Upham, dated November 28, 1862, was a legal and valid transfer and assignment of said bond and warrant of attorney recited in said note.

"*Third.* That the transfer and assignment of said bond and warrant of attorney to Upham by Keene, operated in equity to transfer the mortgage to Upham as security for the payment of said bond, although there was no formal assignment of the mortgage.

"*Fourth.* That the release, dated October 10, 1864, made and delivered by Upham to Keene, at the time when Upham held the title to said bond and mortgage, was effectual to release and discharge the land in dispute in this suit, from the lien and operation of said mortgage.

"*Fifth.* That the deeds dated September 30, 1864, and

[McDowell *v.* Jones *et al.*]

January 10, 1865, executed and delivered by Edwin Dyer to Benjamin Jones, vested a valid title in Benjamin Jones to the land for which this ejectment was brought, which title descended to the heirs of said Benjamin Jones, the defendants in this suit.

"*Sixth.* That the proceedings had upon the mortgage of Edwin Dyer at the suit of Phœbe M. Thompson, under which the premises in dispute were sold at sheriff's sale to said Phœbe M. Thompson, and by her conveyed to Thomas McDowell, the plaintiff, were ineffectual to confer a valid title to the land in controversy, as against the title of the defendants.

"*Seventh.* That the defendants are entitled to recover in this action of ejectment, and therefore judgment is entered for defendants."

The plaintiff's counsel filed numerous exceptions to the findings and conclusions of the Court, which were dismissed.

The plaintiff then took out a writ of error, and assigned as error the dismissal of the exceptions.

*Samuel G. Dixon* and *Edwin S. Dixon* for, plaintiff in error.

The fifth, seventh, and tenth findings of fact are really conclusions of law, and should not have been found as facts.

The note in question was never intended by the parties to be an absolute assignment of the bond and mortgage; it simply recites that they were assigned, and only mentions them as collateral security, and limits the use that can be made of them by specifying that in default of payment of the note they may be sold.

An assignment neither under seal nor in the presence of witnesses, or acknowledged and recorded, is not a valid and legal assignment: Partridge *v.* Partridge, 2 Wr., 80; act 28th May, 1715, Purd. Dig., 162–7. Assignments of mortgages come within the recording act, and, therefore, must be acknowledged: Pepper's Appeal, 27 P. F. Sm., 373.

The release of mortgage given to the defendant was executed by one who was not the holder of the mortgage by legal assignment. The plaintiff had made a thorough examination of the title and had complete searches, disclosing the mortgage as a first lien upon the premises and standing in the name of Keene. He also took a declaration of no set-off from Dyer, the mortgagor and owner of the land, who by the records continued to own the lands for two months after Jaquett took his assignment, Jones'

[McDowell *v.* Jones *et al.*]

deed not having been recorded at the time of this assignment.

*R. P. Allen, M. F. Elliott,* and *F. E. Watrous* for defendants in error.

The findings of fact are conclusive upon all parties. Although there was no such formal assignment of the mortgage as the statute requires in order to transfer the legal title so as to enable the assignee to sue in his own name, yet there was a valid assignment and transfer of the bond which operated as an equitable transfer of the mortgage. The transfer of the note carries with it the security without any formal assignment or delivery: 1 Jones on Mortgages, S., 480; 16 Wallace, 271; Licey *v.* Licey, 7 Barr, 253; Caldwell *v.* Hartupee, 20 P. F. Sm., 74; 123 Mass. R., 58; Jones on Mortgages, Vol. I.

The mortgage was not a lien as to subsequent lien creditors and purchasers until the day when the money was actually paid by Jaquett: 1 Jones on Mortgage, 86; Mullison's Est., 18 P. F. Sm., 212; Schafer *v.* Reily, 50 N. Y. R., 61; 1 Trickett on Liens, secs. 137, 104, 105; Johnson *v.* McCurdy, 83 Pa., 282; Hess *v.* Coleman, 2 W. N. C., 224.

The original bond was never transferred to Jaquett, and, therefore, neither he nor his assignee is entitled to the benefit of the lien of the mortgage. This bond did not accompany the mortgage, and the mortgage could not have been given to secure its payment.

The satisfaction of the judgment entered on the bond operated as a cancellation of the mortgage: 16 Wallace, 271; Mitchell *v.* Coombs, 15 Norris, 431; Anderson *v.* Neff, 11 S. & R., 223; Craft *v.* Webster, 4 Rawle, 255; Cover *v.* Black, 1 Barr, 493, 13 Norris, 489.

*Samuel G. Dixon* and *Edwin S. Dixon* in reply cited Shaver *v.* Williams, 87 Ill., 469; Roberts *v.* Halstead, 9 Barr, 32; Morris *v.* Brady, 5 Wh., 541; Brown *v.* Henry, (not yet reported;) DeWitt's Appeal, 26 P. F. Sm., 283.

October 6, 1884, the opinion of the Court was delivered by GREEN, J.:

It cannot be doubted that the note from Keene to Upham, dated November 28, 1862, contained an effective, valid assignment of the bond and mortgage given by Dyer to Keene. It describes the bond by its date and amount, and the name of the obligor, and the mortgage by a special reference to its record, and declares explicitly that both

were assigned to Upham on the day of the date of the note as collateral security for the payment of the note. While this kind of an assignment would not enable the assignee to proceed by suit in his own name, it was, nevertheless, entirely effectual to pass a perfect title to both the bond and the mortgage to Upham, the assignee, in accordance with its terms.    Subsequently, in February, 1865, and before the assignment to Jaquett, which was not made till November 29, 1865, Upham asserted his title to the bond by entering judgment upon it, in his name as assignee of Keene, in the common pleas of Philadelphia, and by transcript in the common pleas of Tioga. As Dyer, the defendant, made no objection to the form in which the judgment was entered, no one else could do so, and it was as fully operative in all respects as if it had been entered in the name of Keene for the use of Upham. This judgment was notice to all that Upham had enforced his title to the debt secured by the mortgage, as the bond is fully described in the record entry of the judgment precisely as in the mortgage.  Being thus the assignee of the bond and the mortgage, and the plaintiff in the judgment entered upon the bond for the payment of the mortgage debt, Upham was undoubtedly the proper person to release the land bound by the mortgage and judgment. Certainly Keene could not have done so, as his title was divested and all others were strangers.    In this condition of the record, Benjamin Jones, the defendant's predecessor in the title, purchased from Dyer, the owner of the fee, the part of the lands described in the mortgage which is in controversy in this action.    He bought by articles of agreement in September, 1864, and at once entered into possession and made improvements, and he and his heirs have remained in possession ever since.    Deeds were made to him, one on September 30, 1864, and the other on January 10, 1865, for the premises purchased.    It being desired to release the land sold to Jones from the lien of the mortgage to Keene, such release was executed by Upham to Dyer on October 10, 1864, for the consideration of three thousand dollars paid by Dyer to Upham.    Why should not Jones have the benefit of this release?    It is difficult to understand.    Upham's title to the mortgage by equitable assignment was undoubted.    He has obtained judgment for the mortgage debt which clothed him with the legal title thereto.    He only could give an effective release for a lien which he held.    He gave the release for a full consideration actually paid for the benefit of an innocent and good-faith purchaser who took a perfect paper-title

[McDowell *v.* Jonés *et al.*]

for the land in question, and followed it up with actual possession and improvements. If this release was operative then, it certainly was operative against persons whose interests never came into existence until months after it was executed, delivered, and recorded. For it was recorded in Tioga county, where the land lies, on February 2, 1865, and thus again notice was given, not only of the assertion of Upham's title to the mortgage, but of the exercise of his power to release, applied to this particular land, nearly ten months before Jaquett loaned his money or took his assignment. In point of fact, Jaquett never received the original bond secured by the mortgage of November 10, 1862, the bond which he acquired having been really executed in 1865, and dated back to the same date as the original bond. If this was a fraud upon Jaquett, we fail to perceive how Jones, who had nothing to do with it, should be held responsible for it. He was as innocent as Jaquett could possibly be, and his rights were established long before any right of Jaquett had come into existence. His release was recorded, and he was in possession of the land. This possession was sufficient to put Jaquett upon inquiry as to the title of Jones, and that inquiry would naturally have developed the true facts of the case. An examination of the record for liens against Dyer, the owner, would have disclosed Upham's judgment for the very debt described in the mortgage he was about to buy. Moreover, this bond and mortgage were then (in November, 1865,) more than a year past due; Keene, the mortgagee, had never advanced any money on the mortgage; so far as Jaquett was concerned, his advance would only give him a lien from the time it was made; the original bond given with the mortgage never was transferred to Jaquett, and the mortgage was not given to secure the bond executed in 1865, which was assigned to Jaquett; the plaintiff's title is not derived from a sale under the mortgage but from a sale under a *test. vend. ex.* issued upon a judgment entered in the common pleas of Philadelphia in 1874 on the bond and warrant which Jaquett acquired in 1865, and not upon the bond given in November, 1862, with the original mortgage. In all these circumstances, we cannot think that the title of Jones, acquired in 1864, more than a year before Jaquett had obtained any rights whatever, and accompanied with immediate and continuous possession, can be taken away by force of any of the facts claimed in support of the plaintiff's title.

Judgment affirmed.